# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                          No. CR 95-0491 JB

RICHARD HAWORTH,

      Defendant.

## MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** comes before the Court on the Defendant's Motion For Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A)(Compassionate Release), filed August 22, 2024 (Doc. 1500)("2024 Motion"). The primary issue is whether the Court should grant Defendant Richard Haworth's 2024 Motion and reduce his life-plus-1260-month sentence, when Haworth contends that a sentence reduction is warranted on the grounds that: (i) his sentence is lengthy; (ii) he has latent tuberculosis; (iii) he has taken numerous classes in prison; and (iv) his mother is ill and requires his assistance. The Court concludes that: (i) Haworth does not present extraordinary and compelling circumstances that warrant a sentence reduction; and (ii) even if extraordinary and compelling circumstances are present, the 18 U.S.C. § 3553(a) factors counsel against awarding a sentence reduction. Accordingly, the Court denies the 2024 Motion.

---

[1]In its Sealed Memorandum Opinion and Order, filed August 21, 2025 (Doc. 1507), ("Sealed MOO"), the Court inquired whether the parties had any proposed redactions to protect confidential information within the Sealed MOO before the Court published a public version of the Sealed MOO. See Sealed MOO at 1 n.1. The Court gave the parties five calendar days to provide notice of any proposed redactions. See Sealed MOO at 1 n.1. The parties have not contacted the Court or made any filings within CM/ECF to indicate that they have any proposed redactions. Consequently, the Court is now re-filing the Sealed MOO in an unsealed form.

**FACTUAL AND PROCEDURAL BACKGROUND**

The Court takes its facts from: (i) the Indictment, filed September 7, 1995 (Doc. 1); (ii) the 2024 Motion; (iii) the United States' Response in Opposition To Defendant's Second Motion for Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(2), filed November 5, 2024 ("Response"); and (iv) the Court's Memorandum Opinion and Order, filed November 22, 2023 (Doc. 1497)("2023 MOO").

> On September 7, 1995, Haworth was indicted on numerous charges relating to his alleged involvement in a large marijuana trafficking enterprise. <u>See</u> Response at 2. The charges included multiple counts of murder and attempted murder in furtherance of the criminal enterprise, conspiracy to distribute marijuana, and use and carry of a firearm in connection with a crime of violence. <u>See</u> Response at 2; Indictment ¶¶ 21-22, at 10-11. On October 15, 1996, the United States filed a notice of its intent to seek the death penalty against Haworth. <u>See</u> Response at 1-2; Superseding Notice of Intent to Seek Death Penalty as to Defendant Richard Michael Haworth, filed October 15, 1996 (Doc. 921). Haworth pled guilty pursuant to a plea agreement on January 14, 1997, and the Honorable C. LeRoy Hansen, then-United States District Judge for the United States District Court for the District of New Mexico, sentenced Haworth to a term of life followed by a consecutive term of 1,260 months on November 21, 1997. Response at 3; Judgment in a Criminal Case, filed November 21, 1997 (Doc. 1267)("Judgment").

2023 MOO at 2-3 (footnote omitted).

On May 20, 2021, Haworth files a Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A)(Compassionate Release)(Doc. 1490)("2021 Motion"). In the 2021 Motion,

> Haworth demonstrates that he has exhausted his administrative remedies. <u>See</u> Motion at 2. Haworth argues that the severity of the COVID-19 pandemic throughout the Bureau of Prisons ("BOP") and at the Federal Correctional Institution, Lompoc penitentiary -- in which Haworth is currently imprisoned -- constitute extraordinary and compelling reasons for his release. <u>See</u> Motion at 9. Specifically, Haworth notes that he already has contracted tuberculosis while incarcerated, and that the risk of contracting COVID-19 and dying within the BOP system is high. <u>See</u> Motion at 9. Haworth also points to the fact that his elderly mother, who suffers from "medical complications" and recently had a knee replacement, requires assistance that she cannot afford. Motion at 9. Finally, Haworth argues that he would not receive his "lengthy sentence" were

he sentenced today, and that his sentence is overly long when compared to other high-profile defendants like "El Chapo." Motion at 3, 9. In the Motion, Haworth acknowledges he did "bad things," but alleges he killed only people who tried to kill him first, and that he is "no longer the person [he] was 26 yrs [sic] ago." Motion at 9. Haworth's release plan indicates that he plans to live with his mother or, in the alternative, with his uncle or ex-wife. See Motion at 12.

2023 MOO at 3. On November 22, 2023, the Court denies the 2021 Motion. See 2023 MOO at 1.

On August 22, 2024, Haworth files the 2024 Motion. See 2024 Motion at 1. In the Motion, Haworth lists four reasons that the Court should grant him a sentence reduction. First, he asserts that "[i]f I was to be sentenced today I would be looking at a 25[-year] sentence instead of the life" sentence "I have now . . . . The three predicates used against me for upward enhancement cannot be used today." 2024 Motion at 5. Second, he asserts that (i) he has been exposed to tuberculosis; and (ii) there is a "resurgence of COIVD cases . . . ." 2024 Motion at 5. Third, he asserts that he has taken all of the possible classes in prison. See 2024 Motion at 5. Fourth, and finally, he asserts that his "family can use all the help they can get," because his "mother has to use a walker" and has trouble with falls. 2024 Motion at 5.

The United States responds and first acknowledges that Haworth has exhausted his administrative remedies for the 2024 Motion. See Response at 7. Second, the United States maintains that, as to Haworth's argument about his enhancements, "[i]t is not clear what changes in the law Defendant is relying on . . . ." Response at 8. The United State explains that, notwithstanding Haworth's prior convictions and their effect on his criminal history score, Haworth's offense level is 43, which "would have resulted in a guideline range of life, even for a defendant with zero prior convictions." Response at 8. Additionally, the United States notes that Haworth enters into a rule 11(c)(1)(C) plea agreement providing for a life sentence. See Response

at 9.

Third, the United States addresses Haworth's argument about tuberculosis and COVID-19, and maintains that the Court "considered this same argument in its last opinion . . . .  This Court examined the Defendant's medical records and noted he was" healthy, and Haworth has not presented "evidence to the contrary this time around."  Response at 9 (citing 2023 MOO at 32-36). Fourth, the United States asserts that the Court "should not find the Defendant's success in the BOP classroom as an extraordinary or compelling reason to justify a time-served sentence." Response at 10.  Fifth, the United States contends that the Court already addresses Haworth's argument about family circumstances in the 2023 MOO, and the Court "concluded that the Defendant had not met his burden because he had not shown that his mother was incapacitated or that he is the only caregiver available to her."  Response at 11.

Haworth replies to the Response on November 21, 2024.  See Defendant's Response to United States Opposition to Reduction of Sentence (Doc. 1506)("Reply").  In his Reply, Haworth contends that he agreed to his plea deal only because his lawyer told him that the United States threatened to arrest his family.  See Reply at 1.  He also contends that he follows prison rules.  See Reply at 3.  Additionally, Haworth contends that other courts have concluded that the combination of latent tuberculosis and risk of COVID exposure constitutes extraordinary circumstances.  See Reply at 4.  Next, he maintains that his mother has a broken femur and is "undergoing rehab for her leg."  Reply at 4.  Finally, he says that he has received a more severe sentence than more dangerous criminals.  See Reply at 4.

## LAW REGARDING THE GUIDELINES

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court of the United States of America severed the mandatory provisions from the Sentencing Reform Act, Pub. L. No.

98-473, 98 Stat. 1976, thus making Guidelines sentencing ranges effectively advisory.  See United States v. Booker, 543 U.S. at 261.  In excising the two sections, the Supreme Court left the remainder of the Sentencing Reform Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing.  Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable." United States v. Booker, 543 U.S. at 261.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

> (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B)    to afford adequate deterrence to criminal conduct;
>
> (C)    to protect the public from further crimes of the defendant; and
>
> (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(2)(A)-(D).

> [A] defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.

18 U.S.C. § 3551.  To achieve these purposes, § 3553(a) directs sentencing courts to consider: (i) the Guidelines; (ii) the nature of the offense and of the defendant's character; (iii) the available sentences; (iv) the policy favoring uniformity in sentences for defendants who commit similar crimes; (v) the need to provide restitution to victims; and (vi) any pertinent United States Sentencing Commission policy statements in effect on the date of sentencing.    See

18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines are no longer mandatory, both the Supreme Court and the United States Court of Appeals for the Tenth Circuit have clarified that, while the Guidelines are one of several factors which § 3553(a) enumerates, they are entitled to careful consideration. See Rita v. United States, 551 U.S. 338, 349 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many"). They are significant, because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . ." United States v. Cage, 451 F.3d at 593.

The Tenth Circuit has "joined a number of other circuits in holding that a sentence within the applicable Guidelines range is presumptively reasonable." United States v. Terrell, 445 F.3d 1261, 1264 (10th Cir. 2006), overruled on other grounds by Rita v. United States, 551 U.S. at 349, as recognized in United States v. Zamora-Solorzano, 528 F.3d 1247, 1251 n.3 (10th Cir. 2008). This presumption, however, is an appellate presumption, and not one that the trial court can or should apply. See Gall v. United States, 552 U.S. 38, 46-47 (2007); Kimbrough v. United States, 552 U.S. 85, 90-91 (2007); Rita v. United States, 551 U.S. at 351. Instead, the trial court must undertake the § 3553(a) balancing of factors without any presumption in favor of the advisory[2]

_____

[2]Attorneys and courts often say that the Guidelines are advisory, but it appears more appropriate to say that the resulting Guidelines ranges are advisory. See Gall v. United States, 552 U.S. 38, 46 (2007)("As a result of our decision [in United States v. Booker], the Guidelines are now advisory . . . ."); United States v. Leroy, 298 F. App'x 711, 712 (10th Cir. 2008)("[T]he Guidelines are advisory, not mandatory."); United States v. Sells, 541 F.3d 1227, 1237 (10th Cir. 2008)("[T]he sentence ultimately imposed by the district court was based on a correctly calculated Guidelines

range, a stated consideration of the § 3553(a) factors, and an understanding that the Guidelines are advisory."). The Court must consider the Guidelines, see Gall v. United States, 552 U.S. at 46 ("It is . . . clear that a district judge must give serious consideration to the extent of any departure from the Guidelines . . . ."), and must accurately calculate the Guidelines range, see Gall v. United States, 552 U.S. at 49 ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range."). The Court is not mandated, however, to apply a sentence within the calculated Guidelines range. See United States v. Sierra-Castillo, 405 F.3d 932, 936 n.2 (10th Cir. 2005)("[D]istrict courts post-Booker have discretion to assign sentences outside of the Guidelines-authorized range . . . ."). Accord United States v. Chavez-Rodarte, No. CR 08-2499, 2010 WL 3075285, at *2-3 (D.N.M. July 16, 2010)(Browning, J.).

> The Court must adhere to the following three-step sequence when sentencing a criminal defendant: first, determining the appropriate sentencing range on the basis of Guidelines' chapters 2 through 4; next, applying Guidelines-contemplated departures based on parts 5H and 5K; and, only then, varying from the Guidelines framework on the basis of the § 3553(a) factors taken as a whole. The Court must follow this sequence, because: (i) the Guidelines expressly provide for it, and courts must still consult the Guidelines, even if they will subsequently vary from them in the third step of the sequence; and (ii) adherence to this sequence is the only way to give effect to 18 U.S.C. § 3553(e).

> . . . .

> The Supreme Court held in United States v. Booker that "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing," 543 U.S. at 264, but further expounded in Kimbrough v. United States, 552 U.S. 85 (2007), that "courts may vary [from the Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines," 552 U.S. at 101 (alteration in original)(internal quotation marks omitted). In theory, this freedom could mean that a district court may excise individual portions of the Guidelines along the way as it performs an otherwise by-the-book Guidelines analysis, end up with a sentence with built-in variances, and never even know what sentence a true, rigid Guidelines application would yield. In practice, however, appellate courts expect district courts to first obtain the true Guidelines' sentence range and circumscribe their United States v. Booker-granted authority to post-Guidelines analysis "variances." Irizarry v. United States, 553 U.S. 708, 710-16 (2008). A district court that attempts to vary from U.S.S.G. § 1B1.1's basic sequence most likely acts procedurally unreasonably. See Gall v. United States, 552 U.S. 38, 51 (2007)(holding that a sentence is procedurally reasonable if "the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence" (emphasis added)).

- 7 -

Guidelines sentence.  See Rita v. United States, 551 U.S. at 351; Gall v. United States, 552 U.S. at 46-47; Kimbrough v. United States, 552 U.S. at 90-91.

> While the Supreme Court's decision in United States v. Booker has given the sentencing court discretion that it did not have earlier, the sentencing court's first task remains to accurately and correctly determine the advisory-guideline sentence.  Thus, before the sentencing court takes up a defendant's Booker arguments, the sentencing court must first determine whether the defendant is entitled to downward departures.  The sentencing court may, however, also use these same departure factors in the Booker calculus, even if the court does not grant a downward departure.

United States v. Apodaca-Leyva, No. CR 07-1479 JB, 2008 WL 2229550, at *6 (D.N.M. Feb. 13, 2008)(Browning, J.).  The Supreme Court has recognized, however, that sentencing judges are "in a superior position to find facts and judge their import under § 3553(a) in each particular case." Kimbrough v. United States, 552 U.S. at 89. A reasonable sentence is one that also "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a).  See United States v. Booker, 543 U.S. at 261-62.  Applying § 3553(a)'s factors, the Court has concluded that, in an illegal re-entry case, the defendant who re-entered the United States to provide for his two children and two siblings was not materially different from other re-entry cases, and, thus, no variance from the Guidelines sentence was warranted.  See United States v. Almendares-Soto, No. CR 10-1922 JB, 2010 WL 5476767, at *12 (D.N.M. Dec. 14, 2010)(Browning, J.).

## LAW REGARDING COMPASSIONATE RELEASE UNDER THE FIRST STEP ACT

"A federal court generally 'may not modify a term of imprisonment once it has been imposed.'"  Dillon v. United States, 560 U.S. 817, 819 (2010)(quoting 18 U.S.C. § 3582(c)).

---

United States v. Nolf, 30 F. Supp. 3d 1200, 1222-24 (D.N.M. June 20, 2014)(Browning, J.)(emphasis in original).

Before the First Step Act, 18 U.S.C. § 3582 permitted only the BOP Director to ask the court for a defendant's compassionate release.  See, e.g., United States v. Smartt, 129 F.3d 539, 541 (10th Cir. 1997)(explaining that a prisoner was not eligible for compassionate release absent motion from BOP Director).   The First Step Act, however, amended § 3582 to expand district courts' power to reduce defendants' sentences after they have been imposed by "increas[ing] the use and transparency of compassionate release."  The First Step Act adds the following language:

> or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.

18 U.S.C. § 3582.  Defendants, therefore, may petition the court for compassionate release after exhausting administrative remedies.  See United States v. Gieswein, 832 F. App'x 576, 577-78 (10th Cir. 2021)(stating that "[f]ollowing the passage of the First Step Act, a district court may only consider a defendant's motion" after the defendant has exhausted the administrative remedies available via the BOP).[3]  Specifically, a defendant may seek a reduction in sentence directly from

---

[3]United States v. Gieswein is an unpublished opinion, but the Court can rely on an unpublished United States Court of Appeals for the Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A)("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. [. . .] However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citing In re Citation of Unpublished Opinions/Ords. & Judgments, 151 F.R.D. 470 (10th Cir. 1993)).   The Court concludes that United States v. Gieswein, United States v. Johnson, 849 F. App'x 750 (10th Cir. 2021), United States v. Carr, 851 F. App'x 848 (10th Cir. 2021), Richardson v. Daniels, 557 F. App'x 725 (10th Cir. 2014), United States v. Hunt, 793 F. App'x 764 (10th Cir. 2019), United States v. Leroy, 298 F. App'x 711 (10th Cir. 2008), United States v. Pinson, 835 F. App'x 390

the court, provided that: (i) the defendant first seeks a reduction from the BOP; and (ii) that request has either (a) been denied; or (b) thirty days have passed since the original request. <u>See</u> 18 U.S.C. § 3582(c)(1)(A).

A court may grant a compassionate release motion where the defendant: (i) presents extraordinary and compelling reasons which warrant a sentence reduction; (ii) a sentence reduction is consistent with applicable Sentencing Commission policy statements; and (iii) a sentence reduction aligns with the 18 U.S.C. § 3553(a) factors to the extent that they apply. <u>See</u> 18 U.S.C. § 3582(c)(1)(A); <u>United States v. McGee</u>, 992 F.3d 1035, 1042-43 (10th Cir. 2021)("<u>McGee</u>")(citing <u>United States v. Jones</u>, 980 F.3d 1098, 1108 (6th Cir. 2020)).  Defendants must satisfy all three requirements, and "district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." <u>McGee</u>, 992 F.3d at 1043 (quoting <u>United States v. Elias</u>, 984 F.3d 516, 519 (6th Cir. 2021)).

**1.    <u>A Defendant Must Exhaust His or Her Administrative Remedies Before Bringing a Compassionate Release Motion in a District Court</u>.**

Section 3582(c)(1)(A) requires a defendant to exhaust his or her administrative remedies before a court may consider a motion for compassionate release. <u>See</u> 18 U.S.C. 3582(c)(1)(A). Incarcerated persons first must request that the BOP file a motion for compassionate release on their behalf. <u>See</u> 18 U.S.C. 3582(c)(1)(A).  Then, the defendant either may: (i) appeal the BOP's failure to bring a motion on their behalf, or (ii) allow thirty days to lapse after making the request, and then file a motion for compassionate release in the district court. <u>See</u> 18 U.S.C. 3582(c)(1)(A).

---

(10th Cir. 2020), <u>United States v. McRae</u>, 845 F. App'x 804 (10th Cir. 2021), <u>United States v. Springer</u>, 820 F. App'x 788 (10th Cir. 2020), have persuasive value with respect to material issues, and will assist the Court in its disposition of this Memorandum Opinion and Order.

Section 3582(c)(1)(A)'s exhaustion requirement is not jurisdictional.  See United States v. Hemmelgarn, 15 F.4th 1027, 1030-31 (10th Cir. 2021)("Hemmelgarn").  Rather, the requirement is "a claim-processing rule," which means "challenges based on the failure to exhaust 'can be waived or forfeited.'"  Hemmelgarn, 15 F.4th at 1030-31.  See United States v. Nash, No. 19-40022, 2022 WL 2072733, at *1 (D. Kan. June 9, 2022)(Crabtree, J.)("Recently, our Circuit held that this exhaustion requirement is a claim-processing rule that the government may waive or forfeit.").  For example, in Hemmelgarn, the Tenth Circuit considered the defendant's motion for compassionate release, even though the defendant "failed to provide proof that he exhausted his administrative remedies," because "the government did not argue exhaustion on appeal." Hemmelgarn, 15 F.4th at 1031.

Before Hemmelgarn, the Tenth Circuit had suggested that the exhaustion requirement was jurisdictional and, therefore, not subject to waiver.  See, e.g., United States v. Johnson, 849 F. App'x 750, 753 (10th Cir. 2021)("In this circuit, however, § 3582(c)(1)(A)'s exhaustion requirement is mandatory, rather than judicially waivable.").  See also United States v. Gonzales, 547 F. Supp. 3d 1083, 1109 (D.N.M. 2021)(Browning J.)("[T]the Tenth Circuit has continued to impose the exhaustion requirement as mandatory and not judicially waivable despite the COVID-19 pandemic."), aff'd, No. 21-2060, 2021 WL 5985347 (10th Cir. Dec. 17, 2021); United States v. Heath, No. CR-13-102, 2020 WL 1957916, at *2 (W.D. Okla. April 23, 2020)(Palk, J.)(collecting cases).

**2.    A Defendant Must Also Satisfy 18 U.S.C. § 3582(c)(1)'s Tripartite Test to Qualify for Compassionate Release under the First Step Act.**

To qualify for a reduced sentence via a compassionate release motion, a defendant must satisfy the three elements 18 U.S.C. § 3582(c)(1) mandates:

(1) the district court finds that extraordinary and compelling reasons warrant such a reduction; (2) the district court finds that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (3) the district court considers the factors set forth in § 3553(a), to the extent that they are applicable.

United States v. Maumau, 993 F.3d 821, 831 (10th Cir. 2021)(Briscoe, J.)("Maumau").  At step one of the test, district courts "have the authority to determine for themselves what constitutes 'extraordinary and compelling reasons.'"  United States v. Hald, 8 F.4th 932, 938 n.4 (10th Cir. 2021)(quoting McGee, 992 F.3d at 1045), cert. denied, 142 S. Ct. 2742 (2022).  This discretion, however, "is bounded by the requirement under step two of the statutory test that a reduction in sentence be consistent with applicable policy statements issued by the Sentencing Commission." Maumau, 993 F.3d at 832.  The Tenth Circuit has held that there are no current applicable policy statements from the Sentencing Commission, because the existing policy statement, codified at U.S.S.G. § 1B1.13, "is applicable only to motions filed by the Director of the BOP, and not to motions filed directly by defendants."  Maumau, 993 F.3d at 837.  See McGee, 992 F.3d at 1050 ("[T]he Sentencing Commission's most recent policy statement, which was issued prior to the First Step Act, is not applicable.").[4]  Cf. United States v. Carr, 851 F. App'x 848, 853 (10th Cir.

---

[4]While the Court, as a district court, must faithfully and fully follow and apply Tenth Circuit law, the Court is puzzled by the Tenth Circuit's instruction that the district court should not apply the Policy Statement of U.S.S.G. § 1B1.13.

U.S.S.G. § 1B1.13 provides in pertinent part:

Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that --

(1)

**(A)**  Extraordinary and compelling reasons warrant the reduction; or

**(B)**  The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

**(2)**  The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

**(3)**  The reduction is consistent with this policy statement.

U.S.S.G. 1B1.13.

The application notes describe the U.S.S.G.'s conception of extraordinary and compelling reasons:

**Extraordinary and Compelling Reasons. --** Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

**(A)**  **Medical Condition of the Defendant.**

**(i)**  The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

**(ii)**  The defendant is --

**(I)**  suffering from a serious physical or medical condition,

**(II)**  suffering from a serious functional or cognitive

- 13 -

impairment, or

**(III)** experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

**(B)** **Age of the Defendant. --** The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

**(B)** **Family Circumstances. --**

**(i)** The death or incapacitation of the caregiver of the defendant's minor child or minor children.

**(ii)** The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

**(D)** **Other Reasons. --** As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

**2.** **Foreseeability of Extraordinary and Compelling Reasons. --** For purposes of this policy statement, an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement.

**3.** **Rehabilitation of the Defendant. --** Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and

compelling reason for purposes of this policy statement.

4.    **Motion by the Director of the Bureau of Prisons.** -- . . . .  The court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction), after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement, such as the defendant's medical condition, the defendant's family circumstances, and whether the defendant is a danger to the safety of any other person or to the community.

. . . .

**Background:** The Commission is required by 28 U.S.C. § 994(a)(2) to develop general policy statements regarding application of the guidelines or other aspects of sentencing that in the view of the Commission would further the purposes of sentencing (18 U.S.C. § 3553(a)(2)), including, among other things, the appropriate use of the sentence modification provisions set forth in 18 U.S.C. § 3582(c). In doing so, the Commission is authorized by 28 U.S.C. § 994(t) to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." This policy statement implements 28 U.S.C. § 994(a)(2) and (t).

U.S.S.G. § 1B1.13.

The Court cannot and will not apply any analyses that the Tenth Circuit has foreclosed. In the Court's opinion, however, an "applicable policy statement" applying to compassionate release motions currently exists, but, under current Tenth Circuit law, the Court cannot apply it. The question is largely -- what does the phrase "applicable policy statement" mean? The Tenth Circuit essentially read this out of the statute, saying there are none. See McGee, 992 F.3d at 1048. But there is an on-point policy statement; the Tenth Circuit just does not want to restrict the defendant's ability to be resentenced. See McGee, 992 F.3d at 1048. Cf. United States v. Bryant, 996 F.3d 1243, 1255 (11th Cir. 2021)("There is no question that 1B1.13 is *the* policy statement the Commission adopted to comply with this statutory mandate."), cert. denied, 142 S. Ct. 583 (2021). It is hard to imagine a more "applicable" Policy Statement than the one that defines "extraordinary and compelling" reasons. U.S.S.G. § 1B1.13. The Tenth Circuit agrees "that Congress intended for the Sentencing Commission's policy statements to serve as guideposts for district courts under the second part of the statutory test . . . ." McGee, 992 F.3d at 1048. It avoids this statutory interpretation by saying that "§ 984(a)(2)(c) requires the Sentencing Commission to promulgate general policy statements regarding . . . the sentence modification provisions set forth in section . . . 3582(c) of title 18." McGee, 992 F.3d at 1048. "Of course, that does not make sense: if the policy statement is relevant to the motion and helpful for adjudicating the motion, then it must be an 'applicable' statement under the statute." United States v. Bryant, 996 F.3d at 1253-54 (quoting 18 U.S.C. § 3582(c)(1)(A)).

At first blush, it appears that this section must have come from the First Step Act, but no -- some version of this Policy Statement has been in the Guidelines since November 1, 2006. Congress was aware of the pre-First Step Act version of 18 U.S.C. § 3582(c)(1)(A), and did not

change the "extraordinary and compelling" language; it merely allowed defendants to go directly to the federal court and not rely solely on the BOP to file a motion. Thus, there is no instruction in the First Step Act for the Commission to go draft new Policy Statements; Congress looked at the "applicable" policy statement when drafting the First Step Act. Under standard statutory rules of construction, Congress is presumed to know the state of the law that existed at the time it passed the First Step Act. See, e.g., Dewsnup v. Timm, 502 U.S. 410, 419 (1992)("When Congress amends the bankruptcy laws, it does not 'write on a clean slate.'")(quoting Emil v. Hanley, 318 U.S. 515, 521 (1943)); Cannon v. Univ. of Chicago, 441 U.S. 677, 696-97 ("It is always presumed that our elected officials, like other citizens, know the law."); Lindsey v. Lessee of Miller, 31 U.S. 666, 669 (1832)("When in 1807 Congress passed the law, they must be presumed to have legislated on then existing state of things."). There is no sound reason to conclude that Congress intended to change the existing law when it did not change the language of "extraordinary and compelling" in the statute. It is unclear why federal courts and litigants cannot continue to look at the Policy Statement, at least for guidance, in this area of law and must start totally afresh. As the Honorable Andrew L. Brasher, United States Circuit Judge for the United State Court of Appeals for the Eleventh Circuit, states:

> We disagree with that reasoning. The statute's procedural change does not affect the statute's or 1B1.13's substantive standards, specifically the definition of "extraordinary and compelling reasons." The Commission's standards are still capable of being applied and relevant to all Section 3582(c)(1)(A) motions, whether filed by the BOP or a defendant. And the structure of the Guidelines, our caselaw's interpretation of "applicable policy statement," and general canons of statutory interpretation all confirm that 1B1.13 is still an applicable policy statement for a Section 3582(c)(1)(A) motion, no matter who files it.

United States v. Bryant, No. 19-14267, 2021 WL 1827158, at *1 (11th Cir. May 7, 2021).

After United States v. Booker, 543 U.S. 220 (2005)("Booker"), while the U.S.S.G. Guideline ranges are no longer binding and mandatory, courts still look at the Guidelines in arriving at the appropriate sentence, and, in fact, have to calculate carefully the Guidelines and take them into account. See Hughes v. United States, 138 S. Ct. 1765, 1772 (2018)("After this Court's decision in United States v. Booker, 543 U.S. 220 (2005), the Guidelines are advisory only. But a district court still 'must consult those Guidelines and take them into account when sentencing.'")(quoting Booker, 543 U.S. at 264). Even if the Policy Statement is not binding, it would seem federal courts should still be forced to look at the Policy Statement for assistance. In other areas, the courts continue to look at the Guidelines after the First Step Act was passed, even though the Sentencing Commission did not have a quorum until August 5, 2022, and had not changed the Policy Statement language until August 5, 2022. See, e.g., United States v. Jackson, 952 F.3d 492, 501 (4th Cir. 2020)(affirming the district court's consideration of a policy statement in a First Step Act case where the court "appropriately acknowledged that those authorities were not controlling but merely supportive of its evaluation"); Acting Chair Judge Charles Breyer, Incoming Chair Judge Carlton W. Reeves Applaud Senate Confirmation of New Commissioners, United States Sentencing Comm'n, News Release (August 5, 2022). The Sixth Circuit explains that:

- 16 -

_____

> The Sentencing Commission has informally advised that regardless of whether resentencing under the First Step Act constitutes a plenary resentencing proceeding or a more limited sentence modification proceeding, "the Act made no changes to 18 U.S.C. § 3553(a), so the courts should consider the guidelines and policy statements, along with the other 3553(a) factors, during the resentencing."

United States v. Allen, 956 F.3d 355, 358 (6th Cir. 2020)(quoting First Step Act, ESP Insider Express (U.S. Sentencing Comm'n, Washington, D.C.), Feb. 2019, at 1, 8, https://www.ussc.gov/sites/default/files/pdf/training/newsletters/2019-special_FIRST-STEP-Act.pdf).

The Tenth Circuit says that the passage of the First Step Act should have "prompted" the Commission to revise its Policy Statement. Maumau, 993 F.3d at 836. The Tenth Circuit does not cite anything in the statute or legislative history that the Commission had to promulgate a new Policy Statement or that Congress expected a revision. See Maumau, 993 F.3d at 836. It then says that the Commission has been unable to comply with its "statutory duty of promulgat[ion]," but, again, does not cite to any statute or legislative history that says the Commission had to revise the Policy Statement. Maumau, 993 F.3d at 836. The Tenth Circuit later rejects the United States' definition of the Policy Statement, but says once again that the "commission has failed to fulfill its statutory duty to issue a post-First Step Act policy statement . . . ," without citing to anything in the statute or legislative history that says Congress imposed this duty. McGee, 994 F.3d at 1050.

The Court concludes that the most logical interpretation, then, is that Congress knew about the Policy Statement and was telling federal courts to look at it; there is no other applicable Policy Statement. It is unlikely that Congress was referring to a nonexistent Policy Statement, and if it intended the Sentencing Commission to write a new one, it could have said so. While the Tenth Circuit asserts that the Policy Statement was produced one month "before" Congress enacted the First Step Act, the fact that the Sentencing Commission promulgated the Policy Statement while the First Step Act was being drafted suggests the opposite of what the Tenth Circuit concludes; the Policy Statement is the "applicable" Policy Statement to which Congress is referencing and the only one. Moreover, the Sentencing Commission knew that the First Step Act was in progress when it updated the Policy Statement. Even if the federal courts do not, and should not, after Booker, consider the Policy Statement binding and mandatory, it is odd that the Tenth Circuit will reverse a district court for merely considering the Policy Statement. See, e.g., United States v. Carr, 851 F. App'x 848, 853 (10th Cir. 2021)(Tymkovich, C.J.)(reversing district court's compassionate release denial because it applied the Policy Statement).

A second reason that the Tenth Circuit's statutory construction is not compelling is that the Sentencing Commission itself uses the word "applicable" in the Policy Statement. The Sentencing Commission states that the "court may reduce a term of imprisonment . . . if, after considering the factors set forth in . . . 18 U.S.C. § 3553(a), to the extent that they are applicable . . . ." U.S.S.G. § 1B1.13. The Tenth Circuit does not appear to have a problem with the word "applicable" here, but, because it mandates that district courts ignore the Policy Statement, it also ignores Congress' order that the court should consider three factors. It seems that the Tenth Circuit's test is, in fact, less friendly to defendants, despite its air of chastising the district court for its use of the Policy Statement. Even if the court decides that the § 3553(a) factors merit a reduction, if the court took

_____

up the Tenth Circuit's offer to go straight to the "extraordinary and compelling" test, it rarely would rule that factor favors the defendant.  It appears that the Tenth Circuit's order takes away the defendant's right to have the court first decide the § 3553(a) factors, which often, following a lengthy prison sentence, weigh in favor of a reduction.  See 18 U.S.C. § 3582(c)(1)(a)(stating that courts should consider whether extraordinary and compelling circumstances apply "after considering the factors set forth in section 3553(a) to the extent that they are applicable").

Third, the Sentencing Commission, in producing the Policy Statement, expressly was responding "to Congress' mandate to the Sentencing Commission . . ." 28 U.S.C. § 994(t) to "describe what should be considered extraordinary and compelling reasons for the sentence reduction . . . ."  Section 994(t) was enacted in 1984, and the First Step Act did not change the language of § 994(t) at all; it was updated last in 2006.  By the time that Congress was enacting the First Step Act, the Commission was doing exactly what Congress told it to do, so that there was not a gap when the First Step Act became law.

The Tenth Circuit also states that it rejects the Policy Statement, because applying the Policy Statement would eliminate the "catch-all" provision that Congress intended to enact.  McGee, 992 F.35 at 1050.  The Tenth Circuit explains:

> [S]pecifically, treating the existing policy statement as continuing to be applicable would effectively eliminate, in all cases involving motions filed directly by defendants rather than the Director of the BOP, the "Other Reasons" (i.e., "catch-all") category that the Sentencing Commission clearly intended to exist.  This is because the "catch-all" category, as described in the Sentencing Commission's existing policy statement, requires a determination by the Director of the BOP that extraordinary and compelling circumstances exist in a given case.  But, in a case where the defendant has moved for relief under the statute, the Director of the BOP has necessarily *not* made any such determination. This is problematic and clearly undercuts not only Congress's intent to expand the use of compassionate release, but also the Sentencing Commission's intent to recognize a "catch-all" category of cases in addition to those that fall within the narrow confines of the first three categories of cases. Thus, we reject the government's position.

McGee, 992 F.3d at 1050 (emphasis in original)(footnote omitted).  It is not at all clear why a court could not consider the "catch-all" provision, too.  The Policy Statement does not say a district court cannot use a catch-all.  The Tenth Circuit creates one, so if a court is looking at the Policy Statement, it could use it, too.  This reason is particularly salient given that the Sentencing Commission specifically provides for a catch-all and, after the Tenth Circuit says courts cannot look at the Policy Statement, the Tenth Circuit then also creates a catch-all and never says from where its catch-all comes.  The Tenth Circuit shows its true hand when it does not say that the Sentencing Commission has violated the statute, but says "[t]his is problematic and clearly undercuts not only Congress' intent to expand the use of compassionate release, but also the Sentencing Commission's intent to recognize a 'catch-all' category of cases in addition to those that fall within the narrow confines of the first three categories of cases."  McGee, 992 F.3d at 1050.  The Tenth Circuit seems to be saying that a catch-all should and does exist, but without the Policy Statement, it is not clear what its bounds are.

_____

The Tenth Circuit then states:

> Although Congress undoubtedly knew that there would be some time lag between the time of the statutory changes it made with the First Step Act and the Sentencing Commission's issuance of a new policy statement recognizing those changes, it surely could not have known, and did not intend, that there would be a significant time lag, or that the Sentencing Commission would fail altogether to issue a new policy statement.

McGee, 992 F.3d at 1051, n.5.  This is a manufactured problem.  There is not a problem unless the Tenth Circuit creates a statutory duty that does not exist and ignores the already existing Policy Statement.  When Congress wanted new Guidelines or Policy Statements, it knew in the past how to order one.  See, e.g, 28 U.S.C § 994(a)(1)-(2) ("The Commission . . . shall promulgate . . . general policy statements regarding application of the guidelines or any other aspect of sentencing or sentence implementation that in the view of the Commission would further the purposes set forth in section 3553(a)(2)"); id. § 994(a)(2)(B)(requiring the Sentencing Commission to promulgate "general policy statements regarding . . . the conditions of probation and supervised release . . . .").

The Tenth Circuit's statements demonstrate its taste for a new Policy Statement rather than the one mentioned in the First Step Act.  The reader gets the feeling that the Tenth Circuit does not like the prior Policy Statement or Sentencing Commission definition of "extraordinary and compelling," and wants a new one.  In doing so, it creates issues that do not exist and prevents courts from looking at the Policy Statement at all.  McGee limits courts analyzing compassionate release applications for a time until the Tenth Circuit gets what it wants -- a new Policy Statement.  What is more, the Tenth Circuit instructs courts that the Policy Statement is not applicable, but does not indicate what could be "extraordinary and compelling" circumstances that are not in the Policy Statement; the Court also has not thought of other categories.  For example, in this case, Haworth effectively is trying to fit into the "Family Circumstances" category of the Policy Statement where he discusses his mother's health conditions.

Maumau, the Tenth Circuit's second published compassionate release case following the First Step Act, generates odd results contrary to Congress' intent, because it again directs courts to ignore the Policy Statement and also allows courts essentially to disregard mandatory minimums.  In Maumau, it becomes evident that the three-step statutory analysis has now, in the Tenth Circuit, collapsed into a one-step judicial test.  The Tenth Circuit concludes that district courts in carrying out § 3582(c)(1)(A), a three-part statute, possess the ability to determine for themselves what constitutes "extraordinary and compelling reasons," but, because it has decided there is no "applicable" Policy Statement, there do not appear to be any boundaries. The Tenth Circuit then says that the Sentencing Commission -- neither now nor in the future -- can take away that discretion.  The Tenth Circuit never explains how, if a district court has the "independent[]" authority to define the phrase, how its discretion could ever be "inconsistent" with a Policy Statement.  Maumau, 993 F.3d at 832.  The district courts are left to guess what this could mean in the future.

The Tenth Circuit spends a lot of time talking about the difference between "define" and "describe," which is interesting, but not very informative.  Maumau, 993 F.3d at 832.  The real

question is what "extraordinary and compelling" means, and the Tenth Circuit does not attempt to tackle that issue. The Tenth Circuit's comparison of the Policy Statement to a "general statement of policy," Maumau, 993 F.3d at 833, rather than interpretive rules, is curious given that the Administrative Procedures Act, 5 U.S.C. §§ 551-50, does not apply to the Sentencing Commission, see Mistretta v. United States, 488 U.S. 361, 390-92 (1989). In the end, the Tenth Circuit never says why a district court would ever act "inconsistent" with a Policy Statement. Moreover, if all the Sentencing Commission can do is "describe" what it thinks is "extraordinary and compelling," it is unclear why the Policy Statement does not fit the bill and should not at least be considered if it is never even going to be binding. Maumau, 993 F.3d at 833.

It is one thing if the Tenth Circuit intends to say that the Guidelines do not bind district courts; since Kimbrough v. United States, 552 U.S. 85 (2007), no one could deny that a district court could disagree with the Sentencing Commission's promulgations. At the same time, no one thought that courts or the Sentencing Commission could ignore mandatory minimums unless Congress said mandatory minimums could be ignored. Instead, the Tenth Circuit finds in the words "extraordinary and compelling" the ability of district courts to get rid of mandatory minimums. Cf. Maumau, 993 F.3d at 837 ("Nothing in the district court's decision indicates that the district court granted relief to Maumau based upon its general disagreement with the mandatory sentences that are required to be imposed in connection with § 924(c) convictions."). There is nothing in Maumau that stops a district court from imposing the stated mandatory minimum one day and then resentencing below the mandatory minimum the next day if the defendant files a compassionate release motion. The defendant in Maumau was released after serving ten years of a fifty-five-year sentence; he received, therefore, a sentence that was lower than both the mandatory minimums in place when he was sentenced and the mandatory minimums present in § 924(c)'s current iteration. See generally Teague v. Lane, 489 U.S. 288, 309 (1989)("Application of constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system.").

Respectfully, the Court doubts that that this result -- ignoring mandatory minimums -- is what Congress wanted when it used the words "extraordinary and compelling," which are used in the existing policy statement; neither the Sentencing Commission nor Congress' use of these words suggest that district courts have the authority to have a Kimbrough disagreement with Congress and ignore mandatory minimums. See United States v. Tomes, 990 F.3d 500, 505 (6th Cir. 2021)("We will not render § 401(c) useless by using § 3582(c)(1)(A) as an end run around Congress's careful effort to limit the retroactivity of the First Step Act's reforms."). Minimums are not very mandatory if the resentencing court just can ignore them.

While the Tenth Circuit says that there is a three-step process in evaluating compassionate release applications, and states in Maumau that a district court must address all three steps if it intends to grant compassionate release, the Tenth Circuit again does not rely on or analyze § 3553(a) in its analysis, or indicate what the district court has to decide when it grants compassionate release. See Maumau, 999 F.3d at 830 n.3. There is, then, in effect, only one step regarding which the Tenth Circuit analyzes: "extraordinary and compelling," and the district court can decide that issue on its own. There is no applicable policy statement. The Tenth Circuit does not mention the § 3553(a) factors. Hence, the bellwether is the "extraordinary and compelling" reasons, and the district court has discretion to decide what constitutes "extraordinary and compelling." The Court is not convinced that Congress meant the Tenth Circuit's one-step, district

court-by-district court discretion to be the law.  Although the United States Court of Appeals for the Seventh Circuit held that the Policy Statement is not "applicable," under the statute, it also stated:

> [W]e do not see the absence of an applicable policy statement as creating a sort of Wild West in court, with every district judge having an idiosyncratic release policy. The statute itself sets the standard: only "extraordinary and compelling reasons" justify the release of a prisoner who is outside the scope of § 3582(c)(1)(A)(ii). The substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of "extraordinary and compelling reasons"; a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused. In this way the Commission's analysis can guide discretion without being conclusive.

United States v. Gunn, 980 F.3d 1178, 1180 (7th Cir. 2020).  Even if the Tenth Circuit considers the Policy Statement inapplicable, it should, in the Court's view, allow district courts to consider the Policy Statement in their analysis.  By implying in McGee and Maumau that district courts cannot consider the Policy Statement at all, the Tenth Circuit has created a situation in which "every district judge ha[s] an idiosyncratic release policy."  United States v. Gunn, 980 F.3d at 1180.

      With respect, it is difficult to reconcile the result in Maumau with the First Step Act, given that Congress has been clear when it wants certain programs to be retroactive and when it does not want others to be retroactive.  The Honorable Timothy Tymkovich, Chief United States Circuit Judge for the Tenth Circuit, seems uncomfortable with the result, but does not shut the door to it.  See Maumau, 993 F.3d at 838 (Tymkovich, C.J., concurring)("I write separately, however, to note that our holding does not give district courts carte blanche to retroactively apply in every instance the amendments to the stacking provision in 18 U.S.C. § 924(c).  Congress, after all, chose *not* to make those amendments retroactive.")(emphasis in original).  That Chief Judge Tymkovich simply says that statutory changes to mandatory minimums cannot be the only reason for granting compassionate release.  See Maumau, 993 F.3d at 838 (Tymkovich, C.J., concurring)("[A] district court may consider the legislative change to the stacking provision only in the context of an individualized review of a movant's circumstances.").  The problem is not the number of reasons a court considers; the problem is how judges' reasons should not be able to overcome Congress' mandatory minimums.  Then-Chief Judge Tymkovich suggests that more pages of analysis can justify what is going on in the opinions the Honorable Mary Beck Briscoe, United States Circuit Judge for the Tenth Circuit, authored for the Tenth Circuit in McGee and Maumau.  Disagreement with Congressionally imposed mandatory minimums, however, in the Court's view, should not be a factor at all in a court's compassionate release analysis.

      Last, it concerns the Court that the Tenth Circuit purports to apply an abuse-of-discretion standard in compassionate release cases, but has reversed a third of the compassionate release denials it has addressed on the merits.  The Tenth Circuit, in 2019, reversed district courts on 7.1% of criminal cases and 7.5% of "U.S. Prisoner Petitions."  Practitioner's Guide to the United States Court of Appeals for the Tenth Circuit at 9, Office of the Clerk, United States Court of Appeals for the Tenth Circuit (Jan. 1, 2020)(11th ed.),

https://www.ca10.uscourts.gov/sites/default/files/clerk/2021PracGuideUpdate-11thEdition.pdf. See Just the Facts: U.S. Courts of Appeals, United States Courts (Dec. 20, 2016), https://www.uscourts.gov/news/2016/12/20/just-facts-us-courts-appeals#table2 (noting that nationwide, between 2011 and 2015, Courts of Appeals reversed between 5.8% and 6.9% of criminal cases and between 3.2% and 7.6% of "prisoner petitions"). The Tenth Circuit insists that it "review[s] for an abuse-of-discretion" in compassionate release cases. United States v. Pinson, 835 F. App'x 390, 393 (10th Cir. 2020). The Tenth Circuit describes this standard as a "deferential standard," and insists that it "will uphold the district court's ruling unless it relied on an incorrect conclusion of law or a clearly erroneous finding of fact." United States v. Pinson, 835 F. App'x at 394. Yet, of the compassionate release denials that the Tenth Circuit has reviewed on the merits since the First Step Act's passage, it has already reversed district courts on five occasions. See United States v. Gorski, No. 22-3244, 2023 WL 4446354 (10th Cir. July 11, 2023)(reversing district court's denial of pro se compassionate release motion); United States v. Avalos, No. 20-3194, 2021 WL 1921847 (10th Cir. May 13, 2021)(Briscoe, J.)(reversing district court's denial of compassionate release motion); United States v. McRae, 845 F. App'x 804 (10th Cir. 2021)(Holmes, J.)(reversing district court's denial of pro se compassionate release motion); United States v. Carr, No. 20-1152, 2021 WL 1400705 (10th Cir. Apr. 14, 2021)(Tymkovich, C.J.)(reversing district court's compassionate release denial, because it applied the U.S.S.G. policy statement); McGee, 992 F.3d at 1035 (Briscoe, J.)(reversing district court's denial of compassionate release motion). The Tenth Circuit has also affirmed district courts' compassionate release denials where the defendant did not exhaust administrative remedies, see United States v. Springer, 820 F. App'x 788, 792 (10th Cir. 2020)(Philips, J.)(affirming district court's denial of compassionate release motion where defendant had not complied with exhaustion requirement); United States v. Gieswein, 832 F. App'x 576 (10th Cir. 2021)(Kelly, J.)(affirming district court's denial of compassionate release motion where defendant had not complied with exhaustion requirement); United States v. Johnson, No. 20-6103, 2021 WL 1053706, at *2 (10th Cir. March 19, 2021)(McHugh, J.)("Because she has failed to demonstrate that she satisfied § 3582(c)(1)(A)'s mandatory exhaustion requirement, the district court properly rejected her request for relief under the statute."), or did not timely file an appeal, see United States v. Lara, No. 20-6133, 2020 WL 8729680, at *2 (10th Cir. Oct. 1, 2020)(Hartz, J.)(dismissing appeal of district court's denial of compassionate release motion because the defendant did not timely appeal). By contrast, the Tenth Circuit, thus far, has not reversed a district court's grant of compassionate release. See Maumau, 993 F.3d at 821 (affirming district court's grant of compassionate release motion). This undermines judicial efficiency and is problematic for district judges who are not excited about resentencing all the people they have sentenced already. See Teague v. Lane, 489 U.S. 288, 309 (1989)("Without finality, the criminal law is deprived of much of its deterrent effect.").

This area is a treacherous one for district judges. "As former Tenth Circuit judge, and now Stanford law school professor, Michael McConnell, has noted, much of what lower courts do is read the implicit, unwritten signs that the superior courts send them through their opinions." Gutierrez v. Geofreddo, No. CIV 20-0502, 2021 WL 1215816, at *11 (D.N.M. March 31, 2021)(Browning, J.)(citing Michael W. McConnell, Address at the Oliver Seth American Inn of Court: How Does the Supreme Court Communicate Its Intentions to the Lower Courts: Holdings, Hints and Missed Signals (Dec. 17, 2014)). Here, the Tenth Circuit does not appear to apply a true abuse-of-discretion standard to compassionate release denials and is signaling that it wants district

2021)(Tymkovich, C.J.)(reversing a district court where the district court relied on the policy statement, because, "[a]lthough it was within the district court's discretion to conclude the application notes to U.S.S.G. § 1B1.13 still provided the best definition and description of

_____

courts to grant compassionate release applications. Although the Court has no specific statistics upon which to rely, given that the abuse-of-discretion standard is the most deferential standard of review, the Court presumes that the Tenth Circuit's reversal rate is likely -- or should be -- lower than its reversal rate averages. See Practitioner's Guide to the United States Court of Appeals for the Tenth Circuit at 9. Yet, when the district court denies a compassionate release motion where the defendant has exhausted his or her administrative remedies -- which, according to § 3582, it should grant only in extraordinary and compelling circumstances -- it faces a reversal rate of nearly five times the Tenth Circuit's average reversal rate. Cf. United States v. Pinson, 835 F. App'x at 394. Compounding the problem, the Tenth Circuit has spent a considerable amount of time telling district courts what they cannot consider when granting compassionate release motions, and little to no time explaining what extraordinary and compelling circumstances are, or how district courts should apply § 3553(a). See Maumau, 993 F.3d at 832; McGee, 992 F.3d at 1044. The Tenth Circuit instructs repeatedly that district courts have "discretion . . . to independently determine the existence of 'extraordinary and compelling reasons' . . . ." Maumau, 993 F.3d at 832 (quoting 18 U.S.C. § 3582(c)(1)(a)(i). Accord McGee, 992 F.3d at 1044 (same). Respectfully, based on the reversal rates, this discretion, particularly where district judges deny compassionate release applications, appears more limited than the text of the Tenth Circuit's opinions indicate. In sum, the Tenth Circuit's lack of clear guidance, the high volume of compassionate release applications, and the Tenth Circuit's willingness to reverse district courts applying an already vague standard, reduces judicial efficiency and has created a minefield for district judges considering compassionate release applications.

In sum, if the Court were writing on a clean slate, which it is not, because of McGee and Maumau, it would conclude that the Policy Statement does not bind district courts and the courts are free under Kimbrough v. United States to ignore it, but that it is still something that federal courts should read and consider when they consider a compassionate release motion. See Kimbrough v. United States, 552 U.S. at 101 ("[W]hile the statute still requires a court to give respectful consideration to the Guidelines, *Booker* 'permits the court to tailor the sentence in light of other statutory concerns as well.'" (quoting Gall v. United States, 543 U.S. 220, 245 (2005)). Fortunately, the Tenth Circuit has recently acknowledged that it is not "an abuse of discretion for a district court to look to the present policy statement for guidance." United States v. Hald, 8 F.4th 932, 938 n.4 (10th Cir. 2021). See United States v. Birch, No. 22-1234, 2023 WL 6208725, at *2 (10th Cir. Sept. 25, 2023)(quoting United States v. Hald, 8 F.4th at 938 n.4). Accordingly, while the Court recognizes that the Policy Statement does not limit the considerations that a district court can use to find "extraordinary and compelling" circumstances, and that a court might go beyond the Policy Statement and create new categories, the Court acknowledges that it "may look to the present policy statement for guidance." United States v. Hald, 8 F.4th at 938 n.4.

- 23 -

extraordinary and compelling reasons under the circumstances," it was "not apparent the district court recognized U.S.S.G. § 1B1.13 was no longer controlling").  It is not, however, "an abuse of discretion for a district court to look to the present policy statement for guidance."  United States v. Hald, 8 F.4th 938 n.4.  Nevertheless, until the Sentencing Commission is able to "comply with its statutory duty of promulgating a post-First Step Act policy statement regarding the appropriate use of the sentence reduction provisions of § 3582(c)(1)(A)(i)," the existing § 1B1.13 policy statement does not restrict district courts.  McGee, 992 F.3d at 1050.

On May 3, 2023, the Sentencing Commission submitted to Congress amendments to the Sentencing Guidelines, policy statements, and official commentary.  See 88 Fed. Reg. 28254, May 3, 2023.  The Sentencing Commission specifies an effective date of November 1, 2023.  See 88 Fed. Reg. 28254.  One amendment specifically updates U.S.S.G. § 1B1.13 in response to the First Step Act.  See 88 Fed. Reg. 28256.  "The amendment revises § 1B1.13(a) to reflect that a defendant is now authorized to file a motion under 18 U.S.C. § 3582(c)(1)(A), making the policy statement applicable to both defendant-filed and BOP-filed motions."  88 Fed. Reg. 28256-57.  In addition, the amendment expands the list of "extraordinary and compelling reasons" in § 1B1.13's application notes in numerous ways.  For example, the amendment: (i) revises the "Medical Circumstances of the Defendant" subsection to include "medical circumstances not expressly identified in §1B1.13 that were most often cited by courts in granting sentence reduction motions during the pandemic"; (ii) adds a new provision for cases in which a defendant's parent is incapacitated to the "Family Circumstances" subsection; (iii) and creates new subsections for "unusually long sentences" and for defendants who have been victims of "sexual assault perpetrated by BOP personnel."  88 Fed. Reg. 28257.

Because these amendments will not become effective until November 1, 2023, the Tenth

Circuit has continued to hold that "currently 'the district court's discretion is not restricted by any Sentencing Commission policy statements,'" even after the amendments' promulgation.  United States v. Birch, No. 22-1234, 2023 WL 6208725, at *2 (10th Cir. Sept. 25, 2023)(quoting United States v. Hald, 8 F.4th at 938 n.4).  See United States v. Quinn, No. 22-3262, 2023 WL 5091175, at *1 (10th Cir. Aug. 9, 2023)("To date, the Sentencing Commission has not issued an 'applicable' policy statement for motions for compassionate release filed by defendants." (quoting McGee, 992 F.3d at 1049-50)).  The Court, therefore, continues to address only the compassionate release test's first and third elements when it analyzes motions defendants bring directly.  Similarly, as a result of the Tenth Circuit's holdings in McGee and Maumau, the Court determines whether a defendant's case presents extraordinary and compelling circumstances without relying on Sentencing Commission policy statements.

### 3.    It Is Difficult for a District Court to Evaluate Accurately Medical Requests for Compassionate Release Absent Expert Testimony.

It is very difficult for the Court to decide: (i) whether the BOP's medical care has been poor; and (ii) whether that poor care has compromised the defendant's prospects of survival in a compassionate release case.  Normally, poor medical care in prison is addressed in civil cases, and not in criminal cases.  See Ramos v. Martinez, No. CIV 17-0120, 2019 WL 7049620, at *3 (D.N.M. Dec. 23, 2019)(Browning, J.)("Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain that the Eighth Amendment proscribes.").  Typically, the courts do not deal with medical care in the criminal context, but wait for a Bivens action under the Eighth Amendment.  See, e.g., Carlson v. Greene, 446 U.S. 14, 20 (1980); Estelle v. Gamble, 429 U.S. 97, 104 (1976); Richardson v. Daniels, 557 F. App'x 725, 728 (10th Cir. 2014)(affirming dismissal of a prisoner's Bivens claim which alleged that the defendants "violated

his Eighth Amendment rights in connection with their response to a seizure he had," where "corrections officers responded to his seizure, he received prompt medical attention and has been given medicine to treat seizures"). C.f. Moya v. San Juan Cnty. Adult Det. Ctr., No. CIV 20-0431, 2022 WL 16924001, at *3-5 (D.N.M. Nov. 14, 2022)(Browning, J.)(recognizing that § 1983 is the proper avenue for pre-trial detainees to vindicate their medical claims).

The efficient solution to poor medical care in a prison setting is neither to redo a sentence nor to release the defendant.  It seems strange that federal courts do not deal with medical protection in the criminal case unless detention center circumstances jeopardize the defendant's right to effective assistance of counsel, see United States v. Boigegrain, 155 F.3d 1181, 1186 (10th Cir. 1998)("[I]t was impossible for the district court to allow the defendant to waive counsel before determining whether he was competent to stand trial,"), but, once a defendant goes to prison, courts may use poor medical care to release a defendant, see, e.g., United States v. Beck, 425 F. Supp. 3d 573, 586 (M.D.N.C. 2019)(Eagles, J.)(granting a prisoner's compassionate release motion "given her breast cancer and the poor treatment she has received at BOP").  Instead, Bivens actions are a more suitable remedy to problems with prison medical care rather than compassionate release motions.

Moreover, it is difficult for a district court to compare medical care.  Often, a defendant, when released, has no medical insurance, and his or her care is problematic.  It is not clear how the court should compare the care in a medical BOP Facility with care on the outside, particularly where the court must speculate regarding the quality of medical a defendant might receive once released.  Further, it is very difficult for a district court to know, without the discovery and experts it has in a civil case, whether the defendant is the problem or whether the facility is the problem. See generally Nicholson v. Evangelical Lutheran Good Samaritan Soc'y, Inc., No. CV 16-0164,

2017 WL 3127799, at *29 (D.N.M. July 21, 2017)(Browning, J.)(stating that, in a medical malpractice case, the plaintiff must "use expert medical testimony," because, where "'the cause and effect of a physical condition lies in a field of knowledge in which only a medical expert can give a competent opinion,' a plaintiff must introduce expert medical testimony that establishes causation")(quoting Woods v. Brumlop, 1962-NMSC-133, ¶ 15, 71 N.M. 221, 225, 377 P.2d 520, 523, and citing O'Banion v. Owens Corning Fiberglass Corp., 968 F.2d 1011, 1013 (10th Cir. 1992)(affirming an order that excluded evidence of cancer where plaintiff presented no evidence "from a qualified medical expert stating that there is a reasonable medical probability the Plaintiff will have a cancer condition from his asbestos related disease")).

The court should proceed with caution when it encounters the thin record that often exists in criminal cases. Tossing a stack of medical records at the court is not very helpful without expert testimony and a true adversarial process, as can occur when litigating compassionate release motions. On this basis, the court cannot evaluate meaningfully whether the defendant has asked properly for help, whether the facility has denied improperly that care, and how severe the health condition is. Unless the parties are willing to wade deep and present the court with a robust evidentiary record, the court is left with the uneasy feeling that it is dealing with a pro se prisoner's complaint that is often seen in Bivens actions -- skeptical that the situation is as bad as the pro se prisoner says it is. See United States v. Gonzales, 547 F. Supp. 3d at 1118.

## ANALYSIS

The Court denies the 2024 Motion, because Haworth does not demonstrate that "extraordinary and compelling reasons warrant" a sentence reduction. United States v. Maumau, 993 F.3d 821, 831 (10th Cir. 2021).

The Court "generally 'may not modify a term of imprisonment once it has

been imposed.'" <u>Dillon v. United States</u>, 560 U.S. at 819 (quoting 18 U.S.C. § 3582(c)). In 2018, Congress created an exception to this general rule and allows defendants who have exhausted their administrative remedies to petition district courts directly for compassionate release where "extraordinary and compelling reasons warrant such a reduction" in a defendant's sentence. 18 U.S.C. § 3582(c)(1)(A)(i).

2023 MOO at 27. Here, the United States agrees that Haworth has exhausted his administrative remedies, <u>see</u> <u>supra</u>, at 3, so the Court's inquiry begins with the extraordinary-and-compelling-circumstances analysis. In the alternative, even if extraordinary-and-compelling circumstances exist, the Court concludes that Haworth is not entitled to a sentence reduction in light of the § 3553(a) factors.

## I.    HAWORTH'S CASE DOES NOT PRESENT EXTRAORDINARY-AND-<u>COMPELLING CIRCUMSTANCES.</u>

Haworth's case does not present extraordinary-and-compelling circumstances that warrant a sentence reduction. In undertaking this analysis, the Court takes its test from the 2023 MOO:

> The Court derives its test for extraordinary and compelling circumstances from the words' dictionary definitions. Black's Law Dictionary provides the following relevant definition for extraordinary: "Beyond what is usual, customary, regular, or common." <u>Extraordinary</u>, Black's Law Dictionary (11th ed. 2019). The New Oxford American Dictionary defines similarly extraordinary as "very unusual or remarkable." <u>Extraordinary</u>, New Oxford American Dictionary 3d ed. 2010). It defines compelling as "evoking interest, attention, or admiration in a powerfully irresistible way; not able to be refuted, inspiring conviction; not able to be resisted, overwhelming." <u>Compelling</u>, New Oxford American Dictionary (3d ed. 2010).

2023 MOO at 31. Haworth's 2024 Motion lists four reasons why the Court should grant him an early release. First, he asserts that "[i]f I was to be sentenced today[,] I would be looking at a 25[-year] sentence instead of the life" sentence "I have now . . . . The three predicates used against me for upward enhancement cannot be used today." 2024 Motion at 5. Second, he asserts that (i) he has been exposed to tuberculosis; and (ii) there is a "resurgence of COIVD cases . . . ." 2024

Motion at 5.  Third, he asserts that he has taken all of the possible classes in prison.  See 2024

Motion at 5.  Fourth, and finally, he asserts that his "family can use all the help they can get,"

because his "mother has to use a walker" and has trouble with falls.  2024 Motion at 5.

As to the first argument, this argument is vague and lacks support in the record.  Haworth's

reference to the "three predicates used against me" refers to his prior criminal offenses --

Haworth's petition to the federal Bureau of Prisons identifies three precursors by name that

correspond to his prior convictions -- but notwithstanding Haworth's criminal history, Haworth's

offense level is 43, which would have resulted in a Guideline range of life imprisonment,

regardless Haworth's criminal history.  See Response at 8.  Accordingly, this argument does not

support the notion that extraordinary-and-compelling circumstances exist here.

As to the second argument, about Haworth's tuberculosis and exposure to COVID,  the

Court analyzes exhaustively this argument in the 2023 MOO.

> Haworth argues that the COVID-19 pandemic's severity throughout the
> BOP, and the corresponding heightened risk of contracting and dying from the
> virus constitute extraordinary and compelling circumstances meriting his
> release.  See Motion at 9.  General concerns about potential exposure to COVID-
> 19 alone do not demonstrate an extraordinary and compelling reason for a
> reduced sentence.  See United States v. Gonzales, 547 F. Supp. 3d at 1124-35
> ("[T]he mere existence of COVID-19 in society and the possibility that it may
> spread to a particular prison alone cannot independently justify compassionate
> release." (quoting United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020)).
> Rather, a defendant must demonstrate how his or her medical conditions make
> contracting COVID-19 more likely, or make it more likely that acquiring the
> virus would result in complications.  See United States v. Baca, No. CR 16-
> 1613, 2020 WL 5369078, at *15 (D.N.M. Sept. 8, 2020)(Browning, J.)("[C]ases
> in which COVID-19 is a factor for compassionate release require more than
> speculative complications.").  In addition, "access to vaccination . . . weigh[s]
> against a finding of extraordinary and compelling reasons," United States v.
> Hald, 8 F.4th 932 at 939 n.5; see United States v. Jefferson, No. 22-8067, 2023
> WL 5572550,  at *2 (10th Cir. Aug. 29, 2023)(collecting cases), and numerous
> courts have held "that an inmate's denial of a COVID-19 vaccination weighs
> against a finding of extraordinary and compelling circumstances," United States
> v. Baeza-Vargas,  2021  WL  1250349,  at  *2-3  (D.  Ariz.  Apr.  5,

- 29 -

2021)(Teilborg, J.).

Here, the record establishes that Haworth has been diagnosed with "latent tuberculosis." Medical Records and Additional Medical Information at 3, filed May 20, 2021 (Doc. 1491)("Haworth Medical Records"). Courts have recognized that COVID-19 poses a greater threat to individuals with latent tuberculosis, see United States v. Alghaithi, 2020 WL 6305485, at *3, and at least one court has found extraordinary circumstances based solely on the risk of a co-infection of tuberculosis and COVID-19 where the defendant had latent tuberculosis, see United States v. Atwi, 455 F. Supp. 3d 426, 431-32 (E.D. Mich. 2020)(Michelson, J.). Although courts addressing the risk posed by the interaction between latent tuberculosis and COVID-19 have recognized that there is "limited research" on the matter, United States v. Alghaithi, 2020 WL 6305485, at *3, the medical community appears to be arriving at a consensus that tuberculosis "should be considered a risk factor for severe COVID disease," Tuberculosis and COVID-19 Co-Infection: Description of the Global Cohort at 1, Eur. Respiratory J. (2022); Tuberculosis and COVID-19 Interaction: A Review of Biological, Clinical and Public Health Effects at 152, Pulmonology (2021)(recognizing tuberculosis contributes to worsening COVID-19 severity). Because latent tuberculosis may develop into active tuberculosis, see Latent TB Infection and TB Disease, Ctrs. for Disease Control & Prevention (December 11, 2020), https://www.cdc.gov/tb/topic/basics/tbinfectiondisease.htm, the Court agrees that individuals with latent tuberculosis are at greater risk of complications from COVID-19.

Despite the risk that Haworth's latent tuberculosis poses, he is otherwise in good health. See Haworth Medical Records at 7 (indicating that, in 2018, Haworth does not have "cardiopulmonary disease," that his "lungs are clear," and his heart is a normal size); Bureau of Prisons Health Services Health Problems for Richard Haworth, filed May 5, 2022 (Doc. 1494-2)("Health Report"). According to guidance from the Center for Disease Control, Haworth's age, fifty-six, does not place him at "increased risk" for severe illness from COVID-19. COVID-19 Vaccine Guidance at 6, Federal Bureau of Prisons Clinical Guidance (January 4, 2021)("Inmates aged 65 years and older . . . are at increased risk for severe illness from SARS-CoV-2."). Finally, the Court is reluctant to credit Haworth's latent tuberculosis as an extraordinary and compelling circumstance meriting his release where he has refused treatment that may substantially reduce the risk of developing tuberculosis disease. See Haworth Medical Records at 3; Deciding When to Treat Latent TB Infection, Ctrs. for Disease Control & Prevention (March 13, 2018), https://www.cdc.gov/tb/topic/treatment/decideltbi.htm. Reducing Haworth's sentence would send a signal to those in federal custody that by refusing treatment for dangerous ailments, one improves his or her chance of obtaining a reduced sentence. See United States v. Gonzalez Zambrano, No. 18-2002, 2021 WL 248592, at *5 (N.D. Iowa Jan. 25, 2021)(Williams, J.)(recognizing that "[i]t

would be paradoxical to endorse a system whereby a defendant could [proffer] extraordinary and compelling circumstances for compassionate release" by refusing the "health care [offered] to them").

       Haworth declined the COVID-19 vaccine when it was offered to him in 2021.  See Immunization Record at 1.  Numerous courts have held that an inmate's refusal to receive the COVID-19 vaccination weighs against a finding that the inmate's risk of contracting COVID-19 presents an extraordinary and compelling circumstance.  See United States v. Williams, 2021 WL 321904 (D. Ariz. Feb. 1, 2021)(Rayes, J.)(finding the defendant's explanation for refusing the COVID-19 vaccine "incredible in light of his claim that his risk of a serious illness from the COVID-19 virus is an extraordinary and compelling reason for his immediate release"); United States v. Greenlaw, No. 10-0448, 2021 WL 1277958, at *7 (D. Me. April 6, 2021)(Woodcock, J.)("The risk-benefit analysis in favor of inoculation is so overwhelming that the Court holds Mr. Greenlaw's refusal to be vaccinated against his motion for compassionate release.").  Even if Haworth were to change his mind and become vaccinated against COVID-19, "access to vaccination . . . weigh[s] against a finding of extraordinary and compelling reasons."  United States v. Hald, 8 F.4th at 939 n.5.  See United States v. Eccleston, 543 F. Supp. 3d 1092, 1140 (D.N.M. 2021)(Browning, J.)(recognizing that "the COVID-19 vaccine's increasingly widespread availability through the BOP" reduced an inmates' chance of contracting COVID-19).  Accordingly, because Haworth is generally in good health and refuses the COVID-19 vaccine, the court concludes that Haworth has not demonstrated that the risks posed by COVID-19 extend "[b]eyond what is usual, customary, regular, or common," Extraordinary, Black's Law Dictionary (11th ed. 2019), so as to constitute extraordinary and compelling circumstances warranting his release.

2023 MOO at 32-36 (footnotes omitted).  Haworth's 2024 Motion does not explain why this analysis is flawed or why new circumstances might change the Court's conclusion.  Accordingly, the Court hews to its reasoning in the 2023 MOO and concludes that Haworth's tuberculosis and potential exposure to COVID do not constitute extraordinary-and-compelling circumstances that merit release.

       Haworth's third argument, that he has taken as many prison classes as he is able to take, also does not constitute extraordinary and compelling circumstances.  The Tenth Circuit observes that "'[r]ehabilitation of the defendant alone,' Congress has stated, 'shall not be considered an

extraordinary and compelling reason.'" <u>United States v. McGee</u>, 992 F.3d 1035, 1043 (10th Cir. 2021)(quoting 28 U.S.C. § 994(t)).  Other courts of appeals agree: "Our primary point," writes the United States Court of Appeals for the Seventh Circuit, "is more limited: rehabilitation 'cannot serve as a stand-alone reason' for compassionate release.  That observation resolves [the defendant's] contention that his extraordinary record of rehabilitation is itself sufficient to warrant a new sentence of time served."  <u>United States v. Peoples</u>, 41 F.4th 837, 842 (7th Cir. 2022)(Scudder, J.)(quoting <u>United States v. Hunter</u>, 12 F.4th 555, 572 (6th Cir. 2021)). Accordingly, Haworth's rehabilitative record in prison does not, as a matter of law and alone, constitute extraordinary-and-compelling circumstances justifying early release.

Haworth's fourth and final argument is that his "family can use all the help they can get," because his "mother has to use a walker" and has trouble with falls.  2024 Motion at 5.  This argument did not persuade the Court in 2023, and it does not persuade the Court now.  The Court's analysis from two years ago has not changed:

> Haworth contends that his mother's poor health and that she requires someone to assist her present extraordinary and compelling circumstances that call for reducing Haworth's sentence.  <u>See</u> Motion at 9.  The Application Notes to the current Policy Statement recognize that certain family circumstances, including the "death or incapacitation of the caregiver of the defendant's minor child" and "the incapacitation of the defendant's spouse" where the defendant is the "only available caregiver for the spouse," constitute extraordinary and compelling circumstances.  U.S.S.G. § 1B1.13 n.1(C).  The new Policy Statement, which becomes effective on November 1, 2023, expands the family circumstances category to include the "incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent."  88 Fed. Reg. 28255.  <u>See id.</u> at 28257 ("[A] parent has been the family member most often identified as needing care by courts granting sentence reductions.").  Courts have recognized, likewise, that a defendant's need to care for an ailing parent contribute to a finding of extraordinary and compelling circumstances. <u>See</u> <u>United States v. Washburn</u>, No. 10-2456, 2023 WL 3853343, at *4 (D.N.M. June 6, 2023)(Urias, J.)("Defendant has established that the circumstances involving his mother's caregiving contributes to a finding of extraordinary and compelling reasons that warrant his compassionate release because he is the only

available caregiver for her."); United States v. Bucci, 409 F. Supp. 3d 1, 2 (D. Mass. 2019)(Young, J.)(concluding that there is "no reason to discount" a defendant's caregiving role "simply because the incapacitated family member is a parent"). But see United States v. Baye, 464 F. Supp. 3d 1178, 1181, 1190 (D. Nev. 2020)(Jones, J.)(declining to find extraordinary and compelling circumstances where the defendant's seventy-one-year-old mother had "major heart issues," suffered three strokes and two major falls in the preceding years, and was recently found "helpless in bed" by police after a neighbor requested a welfare check); United States v. Ingram, No. 14-0040, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019)(Sargus, Jr., J.)("Many, if not all inmates, have aging and sick parents. Such circumstance is not extraordinary.").

Here, Haworth contends that his mother, who is "over 70 yrs old," "has many medical complications" and recently had a knee replacement. Motion at 9. Haworth has not demonstrated, however, that his mother's condition is so serious that she is "incapacitated." United States v. Bucci, 409 F. Supp. 3d at 2 (quoting U.S.S.G. § 1B1.13 n.1(C)). In United States v. Washburn, the Honorable David Urias, United States District Court Judge for the United States District Court for the District of New Mexico, granted compassionate relief where it was "impossible" for the defendant's mother "to attend to her daily activities of life without help." 2023 WL 3853343, at *4. While the Court empathizes with the medical difficulties of Haworth's mother, Haworth has not demonstrated that her recent surgery has made it "impossible" to "attend to her daily activities" without his assistance. United States v. Washburn, 2023 WL 3853343, at *4. Moreover, Haworth has not demonstrated that he is the "only potential caregiver for his ailing mother." United States v. Bucci, 409 F. Supp. 3d at 2. The defendant in United States v. Washburn, by contrast, established that his mother would go without care unless he was released, because his mother's previous live-in caretaker, the defendant's sister, died by suicide. See 2023 WL 3853343, at *3. In sum, while the Court is sympathetic to Haworth's mother's condition, the Court does not find her medical condition supports Haworth's request for compassionate release as an extraordinary and compelling circumstance.

2023 MOO at 36-38 (footnote omitted). This reasoning remains sound, and, accordingly, the Court holds that Haworth's mother's condition does not constitute an extraordinary-and-compelling circumstance justifying release.

District courts "have the authority to determine for themselves what constitutes 'extraordinary and compelling reasons.'" United States v. Hald, 8 F.4th 932, 938 n.4 (10th Cir. 2021)(quoting United States v. McGee, 992 F.3d 1035, 1045 (10th Cir. 2021)). After reviewing

the record and its reasoning in the 2023 MOO, the Court follows the same course as it follows in

2023. Haworth has not demonstrated that there are extraordinary-and-compelling circumstances

warranting early release, and, as a result, the Court denies the 2024 Motion.

## II.    REDUCING HAWORTH'S SENTENCE IS NOT CONSISTENT WITH THE § 3553(A) FACTORS.

When a district court denies a compassionate-release motion on the grounds that "'any of

the three prerequisites listed in § 3582(c)(1)(A) is lacking'," <u>e.g.</u>, there are no extraordinary-and-

compelling circumstances, the district court does "'not need to address the other[]'" prerequisites.

<u>United States v. McGee</u>, 992 F.3d 1035, 1043 (10th Cir. 2021)(quoting <u>United States v. Elias</u>, 984

F.3d 516, 519 (6th Cir. 2021)). Nonetheless, the Court addresses the § 3553(a) factors. These

factors also do not counsel awarding Haworth a sentence reduction.

The Court analyzes the § 3553(a) factors in the 2023 MOO, and its analysis remains sound:

> First, "the nature and circumstances of the offense and the history and
> characteristics of" Haworth counsel against a reduced sentence. 18 U.S.C.
> § 3553(a)(1). At the time that Judge Hansen imposed the sentence, he noted
> "that the defendant was one of two leaders in an illegal racketeering enterprise
> that involved four murders, one attempted murder, and possession with the intent
> to distribute over 1,000 kilograms of marijuana." Judgment at 8. Although
> Haworth contends that he killed only people who tried to kill him first, <u>see</u>
> Motion at 9, and that he appears to be making attempts at rehabilitating himself
> while incarcerated, <u>see</u> June Letter at 1, the severity of Haworth's offenses weigh
> against his release.
>
> The factors that § 3553(a)(2) describes also weigh against Haworth's
> release. To achieve the Court's goal of "promot[ing] respect for the law,
> and . . . provid[ing] just punishment for the offense," it is important that
> Haworth serve the entirety of his sentence. 18 U.S.C. § 3553(a)(2). It also is
> imperative that the Court deter others in New Mexico from committing the
> serious offenses to which Haworth pled guilty. Moreover, while the Court
> cannot and will not use incarceration for rehabilitative purposes, <u>see</u> <u>United</u>
> <u>States v. Story</u>, 635 F.3d 1241, 1245-47 (10th Cir. 2011)(holding that
> "sentencing courts may not increase the term of incarceration to advance
> rehabilitative goals," because "increasing incarceration to promote rehabilitative
> goals is not permitted under § 3582(a)"), the Court observes that Haworth could

benefit from engaging in further BOP classes and programming, see June Letter at 1. Consequentially, the factors that § 3553(a)(2) describes weigh against Haworth's release, because if the Court reduces Haworth's sentence, the new sentence would be insufficient to reflect the offense's seriousness, promote respect for the law, provide just punishment, afford adequate deterrence.

Neither "the kinds of sentences available," nor "the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission . . . subject to any amendments made to such guidelines," support a reduction in Haworth's sentence. 18 U.S.C. § 3553(a)(3)-(4). If sentenced today for his federal crimes, Haworth would not receive a substantially different sentence . . . . In addition, Haworth pled guilty to three counts of killing an individual in furtherance of continuing criminal enterprise under 21 U.S.C. § 848(e)(1) -- charges for which the United States originally sought the death penalty. See Notice of Intent to Seek Death Penalty as to Defendant Richard Michael Haworth, filed February 14, 1996 (Doc. 301). Because § 848(e)(1) continues to carry with it the possibility of a death sentence today, and because Haworth ultimately did not receive the death penalty, 18 U.S.C. § 3553(a)(3)-(4) do not support any reduction of Haworth's sentence. See U.S.S.G. 2A1.1 n.3 ("If the defendant is sentenced pursuant to . . . 21 U.S.C. § 848(e), a sentence of death may be imposed. . . ."). Moreover, the Court sees no Sentencing Commission policy statements that apply to this case, so § 3553(a)(5) is a neutral factor.

Regarding the sixth factor, "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(7), the Court evaluates the sentence of Haworth's co-defendant, Edward Spivey, who was identified as the other "leader" of the criminal enterprise alongside Haworth. See Judgment in a Criminal Case at 11, CR 95-0491-2, filed November 21, 1997 (Doc. 1268)("Spivey Judgment"). Despite that Spivey pled guilty to one count of Murder in Aid of Racketeering, a crime that carried a "statutory minimum of life imprisonment," Spivey Judgment at 2, 11, Spivey was sentenced to thirty years in prison, see Spivey Judgment at 3. Although Haworth's sentence was substantially longer than Spivey's, Haworth pled guilty to not one, but to three killings in furtherance of the enterprise he and Spivey led. See Judgment at 2. Although Spivey and Haworth led the criminal enterprise together, that Spivey pled guilty only to one killing means he was not "found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Accordingly, that Spivey's sentence was lower than Haworth's weighs neither in favor of nor against reducing Haworth's sentence.

2023 MOO at 44-46. The Court adopts this analysis and concludes that the § 3553(a) factors do

not warrant a sentence reduction here.

      **IT IS ORDERED** that the Defendant's Motion For Sentence Reduction Under 18 U.S.C.

§ 3582(c)(1)(A)(Compassionate Release), filed August 22, 2024 (Doc. 1500), is denied.

 

_____
UNITED STATES DISTRICT JUDGE

*Parties and counsel:*

Ryan Ellison
  United States Attorney
Kristopher N. Houghton
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Richard Haworth
Adelanto, California

     *Defendant pro se*